UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

CW PROFESSIONAL SERVICES, LLC
d/b/a LOCHBRIDGE,

      Plaintiff,

                             Case No.

v.

                             Hon.

VBCONVERSIONS, LLC,

      Defendant.

---

MILLER, CANFIELD, PADDOCK
  AND STONE, P.L.C.
Colin M. Battersby (P71283)
150 W. Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420
battersby@millercanfield.com

*Attorneys for Plaintiff*

---

## **COMPLAINT**

      Plaintiff CW Professional Services, LLC, d/b/a Lochbridge ("Lochbridge")

through its attorneys, Miller, Canfield, Paddock and Stone, PLC, states as follows

for its Complaint for Declaratory Judgment against Defendant VBConversions,

LLC ("VBConversions"):

## THE PARTIES

1.     Lochbridge is a Delaware limited liability company that is wholly owned subsidiary of CW Professional Services BV, a Dutch private limited liability company.

2.     Upon information and belief, VBConversions is a California limited liability company with a primary office in Santa Monica, California. VBConversions does business in Michigan by selling, distributing, downloading, licensing and supporting its software in Michigan and by monitoring and policing the use of its software in Michigan.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. § 2201, because an actual case or controversy exists between the parties.  The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because the dispute involves federal questions and 28 U.S.C. § 1332 because there is diversity of citizenship and because the amount in controversy exceeds $75,000.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, as explained more fully below, the alleged events giving rise to VBConversion's claims related to work being performed for the State of Michigan and because VBConversions has directed its unwarranted threats of litigation to Lochbridge in Michigan.

## **GENERAL FACTS**

5.      Lochbridge is in the business of IT professional, development, customization and staffing services.

6.      At the times relevant to this Complaint, Lochbridge employed Satya Gutulla ("Gutulla") as a Systems Designer Developer.

7.      Lochbridge adheres to a strict Employee Code of Conduct that provides, among other things that:

> a. "The Code is designed to deter wrongdoing and promote…compliance with applicable governmental laws, rules and regulations;"
>
> b. "[Lochbridge] is committed to conducting all business in full compliance with all laws, both domestic and foreign;"
>
> c. "[Lochbridge] views seriously its commitment to legal and ethical business conduct, and expects all of its employees to ensure that this commitment is met;"
>
> d. "[The] Code is based on [Lochbridge's] Policy that all employees comply with all domestic and foreign laws;" and
>
> e. "At no time may an employee undertake, approve or require any action that would violate or result in the violation of any domestic or foreign law…."

8.      As a condition of his employment with Lochbridge, Gutulla was required to, and did, execute an Acknowledgement of Receipt of the Employee Code of Conduct on February 2, 2014 in which he acknowledged: "In

consideration of my employment, I agree to conform to [Lochbridge's] rules and regulations, including those set forth in this Code."

9.     On July 3, 2015, Gutulla downloaded a free trial version of Version 3.11 of VBConversion's VB.net to C# Converter tool (the "Software") using his personal, non-Lochbridge email address.  He did so of his own volition and without the knowledge of, authorization, or instruction from Lochbridge.  As part of the installation process for the Software, Gutulla was purportedly required to click through and "accept" the Software's End User License Agreement ("ULA").

10.    The free trial version of the Software permits the conversion of programming language from one type to another.  According to the ULA, the trial version is subject to a license that limits the time period of use and the number of lines of code that may be converted before a paid license is required. Alternatively, a one-time paid-in-full license to use the Software costs $199 and permits conversion of unlimited lines of code.

11.    After downloading the free trial version of the Software, Gutulla found an unlock code for the Software on a Google forum, which he used to access the full version of the Software without paying for a license.  He did so without the knowledge or consent of Lochbridge.

4

12.     From July 3 to July 5, 2015, and again on August 4, 2015, Gutulla converted code while using the now-unlocked full version of the Software.  He did so without the knowledge or consent of Lochbridge.

13.     None of the code converted by Gutulla using the Software was ever used by Lochbridge or any of its customers and neither Lochbridge nor any third parties benefitted in any manner, whether directly or indirectly, from Gutulla's conduct.

14.     On August 17, 2015, Lochbridge received at its office in Detroit, Michigan a letter from counsel for VBConversions dated August 11, 2015, alerting Lochbridge to Gutulla's use of the Software, demanding that Gutulla cease and desist from further use, and implying imminent litigation absent a response by August 21, 2015.  This letter represented the first time that Lochbridge was made aware of Gutulla's conduct.  Lochbridge immediately pulled Gutulla's laptop, placed him on paid suspension, and began an investigation into the allegations.

15.     On August 18 and 19, 2015, Lochbridge met with Gutulla, where he confirmed that he had downloaded a trial version of the Software and used an unlock code he obtained from the internet to access the full version.  He stated that he did so of his own volition, and without the instruction, knowledge or authorization of Lochbridge.  Gutulla was terminated as a result of his unauthorized conduct.

16.     Also on August 18, 2015, counsel for VBConversions sent another letter to Lochbridge further detailing its investigation into Gutulla's use of the Software.  The letters from VBConversions assumed -- but did not explain how -- Lochbridge was responsible and therefore liable for Gutulla's conduct.

17.     Lochbridge acknowledged receipt of the letters and indicated it needed time to conduct its own investigation into Gutulla's conduct.  On August 28, 2015, counsel for Lochbridge inquired about a demand for consideration in connection with the investigation.   Counsel for VBConversions was non-committal, but suggested the amount would be $150,000 in statutory damages, plus actual damages that may greatly exceed the statutory damages.

18.     Lochbridge, while making no admission of liability or responsibility for Gutulla's behavior, nevertheless attempted to discuss the issue in good faith with VBConversions for several months. But VBConversions continued to insist upon exorbitant damage amounts that are grossly in excess of the $199 fee for which Gutulla could have purchased unlimited conversion rights.

19.     On February 11, 2016, counsel for VBConversions wrote a demand letter to Lochbridge alleging willful violations of the Copyright Act and the Digital Millennium Copyright Act ("DMCA") by Gutulla.  Again, the letter assumed --- but did not explain how -- Lochbridge was responsible and therefore liable for

Gutulla's conduct.  VBConversions demanded $139,000 and threatened to file a lawsuit against Lochbridge if Lochbridge did not pay this extortionate sum.

20.    Gutulla's unauthorized use of the Software was outside the course and scope of his employment.  Neither Lochbridge nor its customers or any third parties benefited directly or indirectly from Gutulla's conduct, which was *ultra vires*.

21.    Lochbridge has not directly or indirectly violated the Copyright Act and is not liable for Gutulla's conduct to the extent, if any, it constituted a violation.

22.    Lochbridge has not directly or indirectly violated the DMCA and is not liable for Gutulla's conduct to the extent, if any, it constituted a violation.

23.    Lochbridge is not a party to the ULA, has not directly or indirectly violated it, and is not liable for Gutulla's conduct to the extent, if any, it constituted a violation.

24.    Despite the foregoing, VBConversions has repeatedly threatened Lochbridge with an expensive lawsuit if it does not pay exorbitant sums of money. Upon information and belief, VBConversions' claims of money damages are well above the reasonable amount it could expect in litigation for the alleged violation.

25.    As such, Lochbridge and VBConversions have adverse legal interests, and there is a real and imminent threat of harm to Lochbridge.

26.    There is an actual present judiciable controversy between Lochbridge and VBConversions as to whether Lochbridge is liable to VBConversions for Gutulla's alleged violations of the Copyright Act, the DMCA, and the ULA.

## FACTS REGARDING VBCONVERSIONS' ENFORCEMENT PRACTICES AND ELECTRONIC MONITORING

27.    VBConversions represents itself to the public as a sophisticated software company with a single, core software product for converting Visual Basic software code into the C# programming language.

28.    VBConversions claims it has been besieged with hacking over the years.    VBConversions therefore includes within its Software electronic monitoring routines that will observe and monitor interactions with the Software, and then send details regarding that interaction to VBConversions.    The information monitored and then sent includes such private information as the name of the computer, the name of the user, their email, their private and public IP addresses, their username, and their domain.  VBConversions uses this information when approaching alleged infringers regarding the unauthorized use of its software.

29.    Upon information and belief, the Software monitors interactions and sends the private information above without any notification to the user.  Instead, the only notification that this information is monitored and then sent is in the 15-page click-through ULA.

8

30.     While its electronic monitoring software is sophisticated, the methods used by VBConversions to limit access to the full version of its software are not. After collecting basic information about a user, VBConversions allows access to the full version by emailing a simple, static unlock code to the purchaser.  The unlock code will unlock the full version of the Software for immediate use.

31.     Upon information and belief, the unlock code sent to an authorized purchaser is capable of unlocking any trial version of the Software, not just the version downloaded by a particular user.  Therefore, a single unlock code, if distributed to others, could be used by many different individuals to unlock the Software.

32.     There are many alternative ways to verify and then unlock software other than the use of a static unlock code.  Such alternatives include product keys that are individualized to a particular piece of software or software serial code, one-time-use keys that are verified at the time of unlock and then deactivated, and other methods that limit an unlock code to a particular user.  Other alternatives could include having separate trial and full versions, and limiting access to download the full versions to authorized users.

33.     VBConversions' use of a static, universal unlock code facilitates -- indeed, encourages -- the unlocking of the full version of its software by unauthorized users because the unlock code can be shared and used easily and

without accompanying copyright notifications.  Upon information and belief, VBConversions is aware its use of unlock codes is not a secure method to prevent access to its software by unauthorized users.

34.   Nevertheless, instead of changing this easily-circumvented access procedure, VBConversions has instead elected to install sophisticated monitoring software into its software for purposes of identifying and then tracking alleged infringement.

35.   Once it has identified an alleged infringer using this system, and upon information and belief, VBConversions engages in a pattern of conduct intended to induce excessively large and unwarranted settlements from alleged infringers.

36.   VBConversions approaches alleged infringers in a manner intended to frighten them into believing they may be subjected to significant damages absent some initial settlement.  VBConversions uses the information monitored by its Software to gather information on the alleged infringing target, and then uses that information to present a false impression of a large infringement concern.

37.   For example, VBConversions Software gathers information on the number of lines of software code that is converted from Visual Basic into C# using its Software.  VBConversions, however, does not own a copyright in the software converted into a new language using its software code; that copyright, if any, belongs to another.  Nevertheless, VBConversions uses the number of lines of code

converted to falsely imply that the alleged infringer may be liable for infringement on a per-line basis for a third party's software code.

38.    For example, in the August 11, 2015, letter to Lochbridge stated:

Overall, the number of lines converted by reason of [Gutulla's] unlawful and wrongful use of the program at Version 3.11 amounts to more than 5,800,000.   An astounding number by anyone's count!  To place this number in perspective, the number of C# lines is roughly equivalent to 0.035% of textual material or 203,000 pages of text.  If the average book is 200 pages in length, this number of pages would create 1,105 books.  Any school would be proud to offer its students a library of this magnitude.

39.    Similarly, on February 11, 2016, VBConversions stated:

[W]e desire, as you do, to settle this matter if at all possible. Accordingly, we have taken the gross number of 5,800,000 lines converted to C# and looked at only 2% of the total or 116,000 lines. This dramatic reduction eliminates from discussion 98% of the conversions.  If we value these lines at one dollar per line, plus the DMCA damages, the total amounts to $139,000.00.   This would represent our demand for settlement.

40.    Upon information and belief, VBConversions knows that it is not entitled to per-line damages for third party software that is converted from Visual Basic into C# using its software.

## COUNT I
## REQUEST FOR DECLARATORY JUDGMENT – NO LIABILITY FOR GUTULLA'S CONDUCT

41.    Lochbridge incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

42.    As a result of the above facts, an actual controversy within this Court's jurisdiction exists between Lochbridge and VBConversions as to whether Lochbridge violated the Copyright Act, the DMCA or the ULA based on its former employee's unauthorized and *ultra vires* use of the Software.

43.    Gutulla has acknowledged that he downloaded the trial version of the Software without authorization or consent of Lochbridge, that he obtained and used the unlock code for the Software without authorization or consent of Lochbridge, and that his actions in doing so were in violation of Lochbridge's Code, and was therefore not authorized by Lochbridge and outside the scope of his employment.

44.    Because of the circumstances regarding Gutulla's use of the Software, Lochbridge is entitled to a judicial declaration that Gutulla's conduct was *ultra vires*.

45.    Because Gutulla's conduct was *ultra vires*, Lochbridge is further entitled to a declaration that it is not responsible or liable for Gutulla's conduct, and that it did not violate the Copyright Act, the DMCA or the ULA based on Gutulla's use of the Software.

46.    Granting Lochbridge's request for declaratory relief will serve a useful purpose in clarifying and settling the legal controversy and releasing

Lochbridge from a very substantial threatened liability which has no basis in law or fact.

## COUNT II
## DECLARATORY JUDGMENT OF NO INFRINGEMENT AND NO VIOLATION OF THE DMCA

47.    Lochbridge incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

48.    VBConversions knowingly uses an insecure method for preventing unauthorized access to the full version of its Software in the form of a static, universal unlock code.

49.    Upon information and belief, VBConversions knows that its product code can be shared amongst users of its software, and that different users can use the same unlock code to unlock different downloaded versions of the Software.

50.    Nevertheless, VBConversions continues to use this method of "securing" its software from unauthorized use.   Such conduct amounts to VBConversions inducing infringement of the Software.

51.    At the same time, VBConversions has implemented a sophisticated monitoring system for the software to allow it to track alleged infringement and then approach the alleged infringers to demand settlement.

52.    Upon information and belief VBConversions has used this information to approach alleged infringers and demand settlement amounts well in

excess of the amount VBConversions would make in selling its software, and well in excess of what VBConversions could reasonably expect as damages for a finding of infringement.

53.     Upon information and belief, VBConversions makes settlement demands based on information it knows to be irrelevant to its copyright infringement claim, using large numbers and confusing rhetoric to imply it is entitled to much more in damages than it reasonably could expect.

54.     The combination of allowing easy access to its software, its surreptitious electronic monitoring, and its excessively high settlement demands demonstrates that VBConversions is using the threat of copyright infringement and the cost of litigation as a method to extort excessive settlement amounts based on minor and *de minimus* alleged infringement.

55.     VBConversions' use of static and universal unlock codes despite knowledge of far more commercially reasonable alternatives demonstrates it intended end-users to obtain and then use the unlock codes to unlock the full version of its products.  VBConversions did so completely as a pretext in order to create an opportunity for it to approach the end-users and demand a settlement.  In doing so, however, VBConversions provided an implied license to those end-users to use the full version of the Software.

56.     Because Gutulla had at least an implied license to the Software as a result of VBConversions' conduct, there is no infringement.

57.     VBConversions' actions in failing to alter its anti-circumvention practices in view of its knowledge of "widespread infringement" rendered those methods essentially non-effective.   Therefore, Lochbridge is entitled to a declaration that it has not violated Section 12 of the DMCA.

58.     Furthermore, VBConversions conduct in inducing and then monitoring infringement, followed by excessively high demands for settlement demonstrate fraud, deceit, unconscionability, or bad faith by VBConversions, warranting a finding of non-infringement and/or non-violation of the DMCA by virtue of VBConversions' unclean hands, or as a result of estoppel or waiver.

## COUNT III
## VIOLATION OF MICHIGAN WIRETAPPING LAW

59.     Lochbridge incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

60.     VBConversions' inclusion of electronic monitoring routines in its Software was done without the consent or knowledge of Lochbridge.

61.     Lochbridge had an expectation of privacy within its own network and on the computers connected to that network.

62.     The electronic monitoring routines in the Software observe, record, and/or transmit information on the events that occurred in those locations.

15

63.    In placing those routines in the Software, and in allowing those routines to observe, record and/or transmit Lochbridge's information, and in receiving and using those transmissions, VBConversion violated the Michigan Wiretapping Act, Mich. Comp. Stat. §750.359 *et seq*.

64.    Lochbridge is entitled to actual and punitive damages for VBConversions' wrongful conduct pursuant to Mich. Comp. Stat. §750.359h.

## COUNT IV
## DECLARATION OF INVALIDITY

65.    Lochbridge incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

66.    Under the Copyright Act, copyright protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of [its] form."  17 U.S.C. §102(b).  The protection of these functional procedures is limited to the protection offered by the Patent Act, 35 U.S.C. §101, *et seq*.

67.    Upon information and belief, the VBConversions Software has a structure, sequence, and/or organization that is essential to the idea/process of converting Visual Basic software code into C# software code.

68.    Because the Software expresses functional characteristics that are essential to an idea/process, it is not protectable as a copyright under the Copyright Act, and any claimed copyright to the Software is therefore invalid.

16

## **PRAYER FOR RELIEF**

WHEREFORE Lochbridge respectfully requests the Court enter an Order declaring:

a.   Gutulla's conduct with respect to his use of the Software was outside the course and scope of his employment;

b.   Lochbridge did not at any point have any knowledge of, nor did Lochbridge expressly or implicitly authorize or sanction Gutulla's use of the Software;

b.   Lochbridge is not vicariously liable for Gutulla's conduct with respect to his use of the Software;

c.   Lochbridge did not directly, indirectly or vicariously violate the Copyright Act with respect to the Software;

d.   Lochbridge did not directly, indirectly or vicariously violate the Digital Millennium Copyright Act with respect to the Software;

e.   Lochbridge is not a party to and did not directly, indirectly or vicariously violate the End User License Agreement;

f.   VBConversions violated the Michigan Wiretapping laws;

g.   Lochbridge is entitled to actual and punitive damages for VBConversions' violation of the Michigan Wiretapping laws; and

h.   Any claimed copyright in the Software is invalid under the 17 U.S.C. §102(b).

Lochbridge further requests the Court award it its costs and attorneys' fees incurred in bringing this lawsuit, which was necessitated by VBConversions' unreasonable conduct, and grant such further and other relief as is just and equitable.

17

## <u>JURY DEMAND</u>

Lochbridge demands a trial by jury of all issues so triable.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.


By:  /s/Colin M. Battersby
      Colin M. Battersby (P71283)
      Attorneys for Plaintiff
      150 West Jefferson, Suite 2500
      Detroit, MI  48226
      (313) 963-6420
      battersby@millercanfield.com


Dated:  February 24, 2016